UNITED STATES DISTRICT COURT
FOR THE NORTHISN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARCUS HOOD,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.:  **2:18-cv-01896-ACA** |
| } | |
| **ANDREW SAUL, Commissioner** } | |
| **Social Security Administration,** } | |
| } | |
| Defendant. } | |

## **MEMORANDUM OPINION**

Plaintiff Marcus Hood appeals the decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL REVERSE** the Commissioner's decision.

## I. PROCEDURAL HISTORY

Mr. Hood applied for a period of disability and disability insurance benefits on September 20, 2012, alleging that his disability began on December 18, 2010. (R. 159).[1] The Commissioner denied Mr. Hood's claim on September 28, 2012.

---

[1] Mr. Hood previously applied for a period of disability and disability insurance benefits on June 16, 2011, alleging that his disability began on December 15, 2010. (R. 152). The Commissioner denied that claim on December 2, 2011. (R. 61). Mr. Hood did not appeal that

(R. 72). Mr. Hood filed a request for reconsideration of the Commissioner's decision, and the Commissioner denied the request. (R. 76–82). Mr. Hood then requested a hearing before an Administrative Law Judge (ALJ). (R. 83–84). On August 23, 2013, the ALJ dismissed Mr. Hood's request for a hearing. (R. 34).

On May 7, 2015, the Appeals Council granted Mr. Hood's request for review of the ALJ's dismissal, vacated the ALJ's order of dismissal, and remanded the case for further administrative proceedings. (R. 34). The ALJ conducted a hearing, and on April 11, 2016, the ALJ issued an unfavorable decision. (R. 37–52). On December 15, 2016, the Appeals Council granted Mr. Hood's request for review and remanded the case again. (R. 58–59).

After holding another hearing, the ALJ issued another unfavorable decision on February 22, 2018. (R. 15-31). On September 20, 2018, the Appeals Council declined Mr. Hood's request for review. (R. 9). The Commissioner's decision is now final and ripe for judicial review. *See* 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation

---

decision. (R. 79, 86). Mr. Hood's appeal in this case concerns only his September 20, 2012 application.

marks and citation omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (internal quotations and citation omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (per curiam) (internal quotation marks and citation omitted).

Despite the deferential standard for review of claims, the court must "'scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence.'" *Henry*, 802 F.3d at 1267 (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or

combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or his past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Mr. Hood has not engaged in substantial gainful activity since December 18, 2010, the alleged onset date, through September 30, 2011, his date last insured. (R. 21). The ALJ found that Mr. Hood has the following severe impairments: tinnitus with bilateral hearing loss; post-traumatic stress disorder (PTSD); left carpal collapse; bilateral tendinitis of the hands; adjustment order; and cocaine, marijuana, and alcohol dependence, all in remission. (R. 21). The ALJ found that Mr. Hood suffers from the following non-severe impairments: low back pain; degenerative joint disease of the right knee; hypertension; and flat feet. (R. 21). The ALJ then concluded that Mr. Hood does not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 22).

After considering the evidence of record, the ALJ determined that through his date last insured, Mr. Hood had the RFC to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations:

> The claimant can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can have no exposure to unprotected heights, hazardous machinery, or to commercial driving. The claimant can handle a moderate level of noise. The claimant can understand, remember, and carry out simple instructions. The claimant can have occasional contact with supervisors, coworkers, and the general public. The claimant can adapt to infrequent, well explained changes in the work environment. The claimant can frequently finger, handle, and feel with the right upper extremity but can only occasionally finger, handle, and feel with the left upper extremity. The claimant can occasionally operate hand controls and push and pull with the left upper extremity.

(R. 24). Based on this RFC, the ALJ found that Mr. Hood cannot perform his past relevant work as a lab technician, animal caretaker, industrial cleaner, hospital cleaner, or commercial cleaner. (R. 28).

Relying on testimony from a vocational expert, the ALJ concluded that jobs exist in the national economy that Mr. Hood can perform, including counter clerk, marker, block inspector, rag inspector, and garment sorter. (R. 29). Accordingly, the ALJ determined that Ms. Hood has not been under a disability as defined in the Social Security Act, from December 18, 2010, the alleged onset date, through September 30, 2011, the date last insured. (R. 30).

## IV. DISCUSSION

Mr. Hood makes four arguments in support of his appeal, but the court need only address one of those arguments. Mr. Hood contends that the ALJ erred by

5

failing to properly evaluate the opinion evidence, including the opinions of Dr. Paul Blanton and Dr. Celia Huston. (Doc. 15 at 12–13). The court agrees.

An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Dr. Blanton and Dr. Huston examined Mr. Hood on March 19, 2011 and September 12, 2011, respectively, as part of Mr. Hood's VA disability claims related to his PTSD. (R. 408–21, 1317–26).

Dr. Blanton found that Mr. Hood is easily distracted and has a short attention span. (R. 413). According to Dr. Blanton, Mr. Hood has "difficulty with multiple distractors," and his attention and concentration are "especially poor the day following nightmares." (R. 413). When asked to describe how Mr. Hood's PTSD symptoms are related to symptoms of his depressive disorder, Dr. Blanton stated that Mr. Hood has "disturbed sleep, poor attention/concentration and memory, [and] social avoidance." (R. 418–19). In addition, Dr. Blanton explained that Mr. Hood has poor "recent memory functioning," experiences discomfort and hypervigilance in crowds, and has an "inability to tolerate loud noises." (R. 417).

Dr. Blanton further noted that Mr. Hood has "[d]ifficulty interacting with co-workers and supervisors." (R. 419). Dr. Blanton also stated that Mr. Hood would have occasional decrease in work efficiency and would experience intermittent periods of inability to perform occupational tasks due to PTSD. (R. 420).

Dr. Huston likewise found that Mr. Hood's PTSD causes "occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks." (R. 1320). Dr. Huston stated that Mr. Hood "persistently re-experience[s]" traumatic events with "recurrent and distressing recollections" of the events; "recurrent distressing dreams" of the events; and has "physiological reactivity" to triggers of traumatic events. (R. 1323). In addition, Dr. Huston found that Mr. Hood's PTSD symptoms "cause clinically significant distress or impairment" in occupational functioning. (R. 1324).

The ALJ does not assign weight to either Dr. Blanton's or Dr. Huston's opinions. The ALJ's only mention of Dr. Blanton's report is that Dr. Blanton found that Mr. Hood met the criteria of PTSD. (R. 26). The ALJ does not reference any of Dr. Blanton's relevant findings with respect to Mr. Hood's PTSD symptoms and their impact on his ability to work. (*See* R. 18–30). The ALJ does not mention Dr. Huston's opinion at all. (*See id.*). While it is possible that the ALJ considered and rejected Dr. Blanton's and Dr. Huston's opinions, "without

clearly articulated grounds for such a rejection," the court "cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179. Accordingly, the court must remand so that the ALJ may "explicitly consider and explain the weight accorded to the medical opinion evidence." *Id.*

Citing 20 C.F.R. § 404.940, Mr. Hood requests that the court assign this case to a different ALJ on remand. (Doc. 15 at 24). The plain language of the regulations state that if a claimant believes an ALJ "is prejudiced or partial with respect to any party or has an interest in the matter pending for decision," the claimant must first file objections with the ALJ. 20 C.F.R. § 404.940. If the ALJ does not withdraw, then the claimant may present his objections to the Appeals Council. *Id.* Even if the regulations permitted the court, in the first instance, to disqualify an ALJ, Mr. Hood has not presented evidence to the court that the ALJ who issued the final ruling is prejudiced or partial or that that ALJ will be assigned the case on remand. Therefore, the court declines Mr. Hood's request to order that the case be assigned to a different ALJ.

## V. CONCLUSION

The court **WILL REVERSE** the Commissioner's decision and **WILL REMAND** for further proceedings consistent with this memorandum opinion. The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this November 18, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE